# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| INTERNATIONAL ASSET MANAGEMENT, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 06-CV-158-TCK-SAJ |
| GERALD HOLT, and CAROLYN HOLT, individually and as trustees of the GERALD LEE HOLT TRUST, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Plaintiff International Asset Management, Inc.'s ("IAM") Petition to Compel Arbitration (Docs. 2 and 3).

## I.      Factual Background and Procedural History

In 2000, Gerald Holt and Carolyn Holt, individually and as trustees of the Gerald Lee Holt Trust (the "Holts"), entered three oil and gas leases (the "Leases") with IAM, whereby IAM leased approximately three hundred acres of the Holts' land for the purpose of oil and gas exploration. The Leases contain binding arbitration provisions. (*See* Leases, Exs. D, F, and G to Pet. to Compel Arbitration ("Any disputes hereunder that can not be settled through normal business discussions shall be settled through arbitration under the auspices of the American Arbitration Association.").)

*The 2001 Arbitration Proceeding and Related Lawsuit (Federal Case No. 01-CV-612-TRB)*

On July 17, 2001, the Holts executed an oil and gas lease with a third party. IAM believed this was in violation of an option and right of first refusal possessed by IAM pursuant to a Letter Agreement entered in conjunction with the Leases. (*See* Letter Agreement, Ex. E to Pet. to Compel Arbitration.) IAM filed an arbitration proceeding to compel the Holts to recognize IAM's option.

On July 27, 2001, the Holts filed suit in Nowata County District Court seeking to declare the Letter Agreement and IAM's option void.  IAM removed the case to federal court.  (*See* Case No. 01-CV-612-B(E) (N.D. Okla.).)  On October 26, 2001, Judge Thomas R. Brett denied the Holts' motion to remand and granted IAM's motion to stay and to compel arbitration.  Judge Brett administratively closed the action, and ordered that if the parties did not file a motion to reopen within sixty days of a final adjudication of the arbitration proceedings, the action would be dismissed with prejudice.  (Order, 10/26/01, Case No. 01-CV-612-B(E).)

On December 12, 2001, the parties settled the 2001 arbitration dispute and executed a written settlement agreement reflecting same (the "Settlement Agreement").  (*See* Settlement Agreement, Ex. N to Pet. to Compel Arbitration.)  The parties agreed that the Holts would not execute any "extension, modification, renewal or new lease" on certain tracts of land without extending to IAM a right of refusal (or option) on the property.  (*Id*.)  Neither party filed a motion to reopen the 2001 federal case within sixty days of the settlement, and the case has therefore been dismissed with prejudice.[1]

The 2004 Arbitration Proceeding and Related Lawsuit (Federal Case No. 05-CV-602-TCK)

On July 18, 2004, the Holts entered into a lease with a third party without extending option rights to IAM.  On March 24, 2005, IAM commenced a second arbitration proceeding against the Holts, seeking to compel the Holts to allow IAM to exercise its option pursuant to the Settlement Agreement.  On June 20, 2005, the Holts submitted a "Response and Counterclaim to Demand for Arbitration."  The Holts asserted property damage claims against IAM based on IAM's alleged negligent operations and trespass on the Holts' land.  (*See* Response and Counterclaim to Demand

---

[1] Although there is not an Order closing or dismissing the case, Judge Brett's Order makes clear that the case was closed and would remain closed if the parties did not take further action.

for Arbitration, Ex. O to Pet. to Compel Arbitration.)  On June 28, 2005, the American Arbitration Association ("AAA") notified the Holts that the counterclaim was not properly filed because it lacked a filing fee.  (*See* 6/28/05 Letter, Ex. P to Pet. to Compel Arbitration.)   The Holts did not correct this error, and their counterclaim was eventually "returned" by the AAA because it was not properly filed.  (*See* 7/27/05 Letter, Ex. Q to Pet. to Compel Arbitration.)

On September 22, 2005, five days before the arbitration hearings were to commence, the Holts filed a suit in state court, asserting property damage claims that were the same or similar to those previously dismissed by the AAA.  This case is currently pending in the District Court of Nowata County, State of Oklahoma, in Case No. CJ-05-126, before Judge Carl Gibson (the "State Case").  The claims in the State Case were asserted against IAM and its Vice President, Martin DeVries ("DeVries").  DeVries is an Oklahoma resident (like the Holts), and his presence in the lawsuit destroys complete diversity between the parties.  DeVries was not a party to the 2004 arbitration proceeding initiated by IAM.

On September 27-28, 2005, the arbitration proceeding was held on IAM's claim against the Holts relating to the Holts' alleged violation of IAM's option.  On October 21, 2005, before the arbitrator issued a ruling, IAM removed the State Case to federal court, alleging that diversity jurisdiction existed because DeVries was fraudulently joined.  This removed case, Case No. 05-CV-602-TCK, was assigned to this Court.  On October 24, 2005, while the State Case was pending in federal court due to removal, IAM filed a Combined Motion to Dismiss or Stay and to Compel Arbitration ("Motion to Dismiss and Compel Arbitration"), arguing that the Holts' claims should be dismissed due to failure to timely prosecute in the arbitration proceedings held September 27-28, 2005.  Alternatively, IAM argued that the claims asserted in the State Case should be submitted to a new arbitration proceeding based on the arbitration provisions in the Leases.

3

On November 17, 2005, the arbitrator ruled in favor of the Holts on IAM's claim, finding that IAM's option had expired in July of 2003.  (*See* Award of Arbitrator, 11/17/05, Ex. R. to Pet. to Compel Arbitration.)  Because they were not properly filed, the arbitrator did not address the Holts' claims against IAM related to property damage that are currently asserted in the State Case.

On February 15, 2006, this Court rejected IAM's fraudulent joinder argument and remanded the State Case to Nowata County.  (*See* Order, 2/15/06, Case No. 05-CV-602.)  Specifically, this Court held:

> In this case, Plaintiffs [the Holts] allege that IAM and DeVries were negligent in allowing oil, acid, and water spills on Plaintiffs' land.  Plaintiffs allege that IAM and DeVries committed negligence per se by failing to plug wells, failing to reach an agreement with Plaintiffs regarding surface damages prior to entering the land, and allowing refuse to flow over the surface of the land, all in violation of Oklahoma statutes.  Defendant has not presented any evidence regarding whether or not DeVries 'directly participated' or 'directed others to carry out' the allegedly tortious acts.  They have therefore not presented clear and convincing evidence that DeVries may not be held personally liable for the negligence alleged in Counts Three and Four of the Petition.  The simple fact that the oil and gas leases were executed solely by IAM does not, in the Court's view, eliminate the possibility that DeVries personally took part in the commission of the tort.  It is undisputed that DeVries was responsible for oversight of operations on Plaintiffs' property.  Because the Court concludes that Plaintiffs have at least stated a cause of action against DeVries as to Counts III and IV, the Court finds that joinder of DeVries was not a "patent sham" such that his joinder to the lawsuit was fraudulent.
>
> In addition, viewing the record as a whole, the Court concludes that Defendant has failed to show by clear and convincing evidence that Plaintiffs had any "deducible bad faith purpose to defeat federal jurisdiction." *See Updike v. West*, 172 F.2d 663, 665 (10th Cir. 1949).  In an attempt to show bad faith, Defendants argue that the claims raised in this case are identical to claims first raised by Plaintiffs in an arbitration proceeding commenced by IAM on March 24, 2005.  The claims asserted in this lawsuit were in fact included in a submission by Plaintiffs entitled "Response and Counterclaim to Demand for Arbitration" in the arbitration proceeding.  However, because Plaintiff failed to pay a filing fee, the counterclaims are not part of the pending arbitration proceedings.  Defendants allege that Plaintiffs added DeVries as a defendant in the Nowata County lawsuit, which was filed five days before the arbitration hearing commenced, solely for the purpose of destroying diversity in federal court.  This argument is unavailing.  Plaintiffs apparently

4

> determined to sue IAM in state court rather than continue to assert their counterclaim in the arbitration proceeding. While the Court makes no determination as to whether this was improper or whether the case should be stayed or dismissed pending the arbitration proceedings, this fact alone does not persuade the Court that DeVries was fraudulently joined in the action. DeVries was not a party to the arbitration proceeding, so Plaintiffs' counterclaims in that proceeding could not have been asserted against him. When Plaintiffs decided to be master of their claims and sue in state court, it is conceivable that Plaintiffs made a good-faith determination to sue DeVries, in addition to IAM, as an individual defendant. In short, the facts surrounding the related arbitration proceedings do not convince the Court that naming DeVries in the state court action was fraudulent or in bad faith.

(*Id.* (footnotes omitted).) The Court specifically stated that its ruling on remand did not impact the state court's eventual determination of whether dismissal or stay was appropriate in light of the pending arbitration proceedings initiated by IAM. (*Id.* n.3) This Court simply determined that federal jurisdiction did not exist, leaving the state court to decide the issues presented by IAM's Motion to Dismiss and Compel Arbitration.

### *New Federal Case Filed By IAM to Compel Arbitration of the Claims Asserted in the State Case (Federal Case No. 06-CV-158-TCK)*

One month after this Court's entry of its remand Order, on March 15, 2006, IAM filed the Petition to Compel Arbitration ("Federal Petition to Compel Arbitration") that is currently pending in this case, Case No. 06-CV-158-TCK. Therein, IAM argues that all of the Holts' claims asserted in the State Case are subject to binding arbitration pursuant to arbitration provisions in the Leases. This is the same argument made in the Motion to Dismiss and Compel Arbitration that IAM filed in federal court prior to remand of the State Case. (*See* Defs.' Combined Mot. to Dismiss or to Stay and to Compel Arbitration, Case No. 05-CV-602.) Also on March 15, 2006, IAM filed a motion in the State Case to stay all proceedings pending this Court's determination of the Federal Motion to Compel Arbitration.

On April 24, 2006, the Holts filed a response to the Federal Petition to Compel Arbitration,

arguing that the new federal case filed by IAM was "an impermissible collateral attack" on this Court's remand decision.  (*See* Resp. in Opp. to Pet. to Compel Arb. 1.)  The Holts argued that this Court lacks subject matter jurisdiction to entertain IAM's Federal Petition to Compel Arbitration because this Court does not have jurisdiction over the underlying dispute in the State Case.  The Holts alternatively argued they are entitled to a jury trial on the issue of whether the property damage claims were in fact subject to arbitration.

After reading the briefs, the Court determined that the primary issue presented was not, as asserted by the Holts, whether the Court had subject matter jurisdiction.  It was whether the Court should stay its proceedings in deference to the pending State Case under the *Colorado River* doctrine.[2]  However, the Holts' response brief did not address the substantive *Colorado River* factors.  Therefore, on July 20, 2006, the Court ordered the Holts to submit a supplemental response brief that addressed the "factors for abstention under the *Colorado River* doctrine, as such doctrine is addressed in the context of a motion to compel arbitration in federal court while there are pending state court proceedings."  (Order, 7/20/06.)[3]

On August 3, 2006, the Holts filed their supplemental response, and the Court granted IAM the opportunity to file a supplemental reply.  These filings sufficiently apprised the Court of the status of the state-court proceedings and other *Colorado River* factors, such that the Court now has

---

[2] The *Colorado River* doctrine, based on the case of *Colorado River Conservation District v. United States*, 424 U.S. 800 (1976), permits a federal court to dismiss or stay a federal action in deference to pending parallel state court proceedings, based on considerations of wise judicial administration.  *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994).  Although not a true form of abstention, it is "often treated as a  variety of abstention."  *Id.*

[3] The Court was generous in allowing the Holts an opportunity to argue that *Colorado River* abstention should apply, since their original response raised only the lack of subject matter jurisdiction.  The Court construes the Holts' Supplemental Response to Plaintiff's Petition to Compel Arbitration a motion to stay or dismiss under the *Colorado River* doctrine.

sufficient information to decide all issues presented.  On October 4, 2006, Judge Gibson granted IAM's motion to stay the State Case pending this Court's ruling on IAM's Federal Petition to Compel Arbitration.

## II.      Subject Matter Jurisdiction

Although a suit to compel arbitration arises under the Federal Arbitration Act ("FAA"), it does not present a "federal question" for jurisdictional purposes.  *See Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1, 25 n.32 (1983) (noting that the Arbitration Act is an "anomaly in the field of federal-court jurisdiction" because "it creates a body of federal substantive law . . . yet it does not create any independent federal-question jurisdiction"). Instead, Section 4 of the FAA "provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue."  *Id.*; 9 U.S.C. § 4 ("A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such an agreement, would have jurisdiction under title 28 . . . .").

The parties in this lawsuit are of complete diversity, and there is no dispute that the amount in controversy exceeds the jurisdictional amount.  Thus, diversity jurisdiction pursuant to 28 U.S.C. § 1332 exists based on the face of IAM's Petition to Compel Arbitration.  Nonetheless, the Holts argue that, in determining whether there is complete diversity among the parties, the Court must also consider the citizenship of DeVries because this Court has determined that he is properly named in the State Case.  The Holts argue that IAM's filing of this federal case without naming DeVries as a defendant is an "impermissible end-run around the Court's non-appealable remand order."  (Resp. in Opp. to Pet. to Compel Arbitration 3-4.)  The Holts rely on language from *Moses H. Cone* quoted

7

above, which states that federal jurisdiction is proper only when "the federal district court would have jurisdiction over a suit on the *underlying dispute*." *Moses H. Cone*, 460 U.S. at 25 n.32 (emphasis added). According to the Holts, the "underlying dispute" is the State Case pending in Nowata County, for which this Court has ruled that federal jurisdiction does not exist. (*See* Order, 2/15/06, Case No. 05-CV-602.)

The Holts' jurisdictional argument, although it has some visceral appeal, is not supported by the facts and procedural history of *Moses H. Cone*, a leading Supreme Court decision on how to treat federal motions to compel arbitration. In *Moses H. Cone*, Moses H. Cone Memorial Hospital (the "Hospital") entered into a construction contract for additions to the hospital with Mercury Construction Corporation ("Mercury"). The hospital also hired J.N. Pease Associates (the "Architect") to design and oversee the construction project. *Moses H. Cone*, 460 U.S. at 5 (using same short names for parties). Pursuant to the contract between the Hospital and Mercury, all disputes were to be referred in the first instance to the Architect. The dispute could then be submitted to binding arbitration.

Mercury submitted a claim to the Architect against the Hospital. While negotiations and proceedings were pending on this claim, the Hospital filed a declaratory judgment action in state court. In this state action, the Hospital (a North Carolina corporation) sued Mercury (an Alabama corporation) and the Architect (a North Carolina corporation). Therefore, like the parties in the State Case at issue here, the parties in the state court proceeding in *Moses H. Cone* were not of complete diversity.[4]

_____

[4] In the appellate decision reviewed by the Supreme Court, the Fourth Circuit speculated that the Hospital joined the Architect in the state lawsuit "to avoid removal of the action to federal court." *See Mercury Construction Corp. v. Moses H. Cone Memorial Hosp.*, 656 F.2d 933, 944 (4th Cir. 1981).

Approximately one month after the state court action was filed, Mercury filed suit in federal court, seeking an order compelling arbitration of the claims raised in the state proceeding. Simultaneously, Mercury removed the state court action to federal court. *See id.* at 7 n.4.[5] The district court remanded the state lawsuit initiated by the Hospital based on lack of complete diversity between the parties. *See id.*[6] Nonetheless, even after remand of the state action, the district court went on to consider the motion to compel arbitration filed by Mercury in the federal lawsuit and decided to stay the case in deference to the state court proceedings under the *Colorado River* doctrine. The district court's decision to stay the federal proceeding was eventually reversed by the Fourth Circuit. *Id.* at 8. The Fourth Circuit's reversal of the stay and remand with instructions to compel arbitration was affirmed by the Supreme Court. *See id.* at 29.

The existence of the district court's *subject matter jurisdiction* to entertain the motion to compel arbitration, notwithstanding the existence of the state court proceeding presenting non-diverse parties, was not directly addressed by the Fourth Circuit or the Supreme Court in the *Moses H. Cone* decisions. Instead, both decisions reviewed the propriety of the district court's abstention out of deference to the state court proceedings, which included a party not present in the federal case (the Architect). However, if the district court did not have jurisdiction to entertain the motion at all,

---

[5] The fact that Mercury simultaneously removed the state court action and filed a new suit compelling arbitration is the only procedural difference between *Moses H. Cone* and the instant case. In this case, IAM removed the federal case before it filed the federal action. However, the Court sees no reason that this difference in timing affects the Court's subject matter jurisdiction.

[6] Although the Supreme Court's decision does not explain Mercury's basis for removal, *see Moses H. Cone*, 460 U.S. at 7 n.4, it appears from the Fourth Circuit's decision that Mercury argued that the dispute between the Hospital and Mercury was "separate and independent" from the dispute between the Hospital and the Architect, such that the Architect's citizenship should not be considered for jurisdictional purposes. *See Mercury Construction Corp. v. Moses H. Cone Memorial Hosp.*, 656 F.2d 933, 937 (4th Cir. 1981). Although not identical, this is similar to the fraudulent joinder argument asserted by IAM upon removal.

the Fourth Circuit and Supreme Court would have had no occasion to consider the *Colorado River* doctrine and certainly would not have ordered the district court to compel arbitration. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review' . . . [a]nd if the record discloses that the lower court was without jurisdiction this court will notice the defect, although the parties make no contention concerning it.") (quoting cases decided prior to *Moses H. Cone*). It is therefore clear that the district court in *Moses H. Cone* had subject matter jurisdiction to address the motion to compel based on the complete diversity between the parties in the federal case (Mercury and the Hospital), notwithstanding that the parties in the state case (Mercury, the Hospital, and the Architect) were not diverse. This is true even when the same district court compelling arbitration has ruled that the pending state court case is non-removable. *See Moses H. Cone,* 460 U.S. 7 n.4; *Bank One, N.A. v. Boyd*, 288 F.3d 181, 183 (5th Cir. 2002) (in which federal cases at issue were filed "immediately following the remand" of the related state cases).

The procedural posture of the case before the district court in *Moses H. Cone* is virtually identical to the procedural posture of this case and makes clear that this Court does have subject matter jurisdiction. The citizenship of DeVries, who is not a named party in this litigation, need not be considered for purposes of the Court's jurisdictional analysis, and the Court has subject matter jurisdiction over the instant suit pursuant to 28 U.S.C. § 1332 because the parties in this case (IAM and the Holts) are of diverse citizenship and because the amount in controversy exceeds $75,000.[7]

---

[7] The Holts did not argue that DeVries was an indispensable party pursuant to Federal Rule of Civil Procedure 19(b), s*ee, e.g., PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 202 (6th Cir. 2001) (arguing federal court lacked subject matter jurisdiction to entertain petition to compel arbitration due to non-presence of indispensable party), and the Court does not address this question.

III.    *Colorado River* Doctrine

As the Fourth Circuit and Supreme Court's analysis in *Moses H. Cone* make clear, the real issue presented is not whether the Court has subject matter jurisdiction to decide the arbitrability question but whether it should refrain from doing so out of deference to the state court proceedings pursuant to the *Colorado River* doctrine.  "The *Colorado River* doctrine applies to 'situations involving the contemporaneous exercise of concurrent jurisdictions . . . by state and federal courts.'" *Fox v. Maulding*, 16 F.3d 1079, 1080 (10th Cir. 1994).  Although not a true form of abstention, the doctrine is often treated as a variety of abstention and is governed by the general principle that abstention from the exercise of federal jurisdiction is the exception, not the rule.  *See id.*  "The doctrine permits a federal court to dismiss or stay a federal action in deference to pending parallel state court proceedings, based on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (internal quotation omitted).

The decision of whether to dismiss or stay under the *Colorado River* doctrine is in the discretion of the district court in the first instance.  *Id.* at 1081.  However, federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them, and "declining to exercise jurisdiction based on the *Colorado River* doctrine is appropriate only in exceptional circumstances." *Id.*  This is because, "in the absence of weightier considerations of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* (quotation omitted) (citing *Colorado River*, 424 U.S. at 817-18).

In analyzing whether exceptional circumstances exist to justify a stay or dismissal under the

*Colorado River* doctrine, courts consider a number of factors.  *Fox*, 16 F.3d at 1081.  "Before examining these factors, however, a federal court must first determine whether the state and federal proceedings are parallel."  *Id.*  Suits are parallel "if substantially the same parties litigate substantially the same issues in different forums." *Id.* (quotation omitted).  In determining whether state and federal proceedings are parallel, the Tenth Circuit has instructed courts "to examine the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings," as opposed to examining how the state proceedings "could have been brought in theory." *Id.* This approach is preferred by the Tenth Circuit because, in order for a stay or dismissal to be based on the *Colorado River* doctrine, the state court litigation must be an "adequate vehicle for the complete and prompt resolution of the issue between the parties" and because, if the *Colorado River* doctrine is invoked, a federal court should "have nothing further to do in resolving any substantive part of the case."  *Id.* at 1081-82 (quotations omitted).

A.  **Comparison of Issues Presented in State Case and Federal Case**

The State Case consists of five property damage claims asserted by the Holts against IAM and DeVries.  In support of its argument that the federal and state proceedings are not sufficiently parallel, IAM contends that it has "never sought to compel arbitration in state court, and no motion, application or other request for arbitration has been raised by IAM in state court or is currently at issue in the state court suit."  (Plfs.' Supp. Reply in Resp. to Defs.' Supp. Resp. to Plfs.' Pet. to Compel Arbitration 1.)  Although the Holts do not take issue with this statement, the Court finds it to be patently incorrect.  Before the State Case was remanded, IAM and DeVries filed the Motion to Dismiss and Compel Arbitration.  Therein, IAM requested that "this matter [the State Case] be compelled to arbitration and that this suit be stayed pending the resolution of the arbitration."  (*See*

12

Defs.' Combined Mot. to Dismiss or to Stay and to Compel Arbitration 8, Case No. 05-CV-602.)[8] Upon remand to Nowata County, this motion remained pending in the State Case.  *See Meier v. Premier Wine & Spirits, Inc.*, 371 F. Supp. 2d 239, 244 (E.D.N.Y. 2005) (explaining that, after a remand order takes effect, the parties simply pick up where they left off before the order was entered and that "no new pleading is needed because no previously existing pleading has been nullified by virtue of the order"); *Delgado v. Shell Oil Co.*, 890 F. Supp. 1324, 1350 (S.D. Tex. 1995) (noting that "[b]ecause these cases will be remanded any unaddressed pending motion in these cases must be addressed to the state courts").  Although the motion does not appear on the docket sheet of the State Case (*see* Ex. A to Supp. Resp. to Plfs.' Pet. to Compel Arbitration), a party need not reassert a motion filed prior to remand; the litigation is remanded exactly as it existed in federal court.

Thus, the issues presented in the State Case consist of the five property damage claims and the Motion to Dismiss and Compel Arbitration of the claims against IAM.  The parties in the State Case are the Holts versus IAM and DeVries.  The only issue presented in the federal case is whether to compel arbitration of the issues raised in the State Case against IAM.  The Court must determine whether the common issue of whether to compel arbitration renders the cases sufficiently parallel to consider the *Colorado River* factors.

As explained above, the Tenth Circuit has stated that, in order for suits to be parallel for purposes of invocation of the *Colorado River* doctrine, the state case must be an adequate vehicle for deciding the issue and the federal court must have "nothing further to do in resolving any substantive part of the case." *Fox*, 16 F.3d at 1081-82.  Because this federal case (presenting only arbitrability issue) is subsumed in the State Case (presenting arbitrability issue plus other property

---

[8] DeVries did not move for this relief because he is not a party to the Leases, and the claims against DeVries are not subject to the arbitration provisions in the Leases.

damage claims), this requirement is met. That is, if this Court stayed the case based on the *Colorado River* doctrine, there would be nothing further for the federal court to do following conclusion of the State Case. In addition, the weight of authority indicates that the overlap of the arbitrability issue renders the state and federal cases sufficiently parallel to consider the *Colorado River* factors. *See Bank One N.A. v. Boyd*, 288 F.3d 181 (5th Cir. 2002) (addressing *Colorado River* factors where only common issue between state and federal proceedings was whether to enforce arbitration provision in contract); *PaineWebber, Inc. v. Cohen*, 276 F.3d 197 (6th Cir. 2001) (addressing *Colorado River* factors where only common issue between state and federal proceedings was whether to enforce arbitration provision of contract and where motion to compel arbitration had not yet been raised in state proceeding). The Court concludes that consideration of the *Colorado River* doctrine is proper because the sole issue presented in the federal proceeding is also at issue in the State Case.[9]

**B.     Consideration of *Colorado River* Factors**

The Tenth Circuit has set forth the following "nonexclusive list of factors" for a district court to consider in deciding whether exceptional circumstances exist to warrant deference to parallel state court proceedings:   (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) the vexatious or reactive nature of either the federal or the state action; (6) the adequacy of the state court action to protect the plaintiff's rights;

---

[9] In *R.J. Griffin & Company v. Beach Club II Homeowners Association, Inc.*, No. 00-1349, 2001 WL 101467 (4th Cir. Feb. 7, 2001), which was referenced by the Court in a previous Order, the Fourth Circuit reached the conclusion that the suits were not parallel. However, in that case, it was not clear that the arbitrability issue had been raised in the state proceeding. *See id.* (stating that only issue in state case was negligence claim).

and (7) whether the party opposing abstention has engaged in impermissible forum shopping. *See Fox*, 16 F.3d at 1082 (citing *Colorado River* for first four factors, *Moses H. Cone* for fifth and sixth factors, and *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1370-71 (9th Cir. 1990), for seventh factor). The factors should not be used as a mechanical checklist, and no single factor is dispositive. *See Fox*, 16 F.3d at 1082. The court should engage in a balancing of "the important factors as they apply in a given case, with the balance weighted heavily in favor of the exercise of jurisdiction." *Id.*

The first factor is not relevant as neither the state or federal court have assumed jurisdiction over any property. As to the second factor regarding the inconvenience of the forum, the federal court and state court are in the same geographic region, and this factor weighs in favor of exercising federal jurisdiction. *See Bank One, N.A.*, 288 F.3d at 185. In addition, the parties agreed to arbitrate their claims arising out of the Leases in Tulsa, Oklahoma, indicating that this is not an inconvenient forum for either party.[10]

As to the avoidance of piecemeal litigation, this Court is only able to compel arbitration of the Holts' claims against IAM and cannot make any determination as to the Holts' claims against DeVries. There will therefore be "piecemeal" litigation of the claims against DeVries if the claims against IAM are compelled to arbitration. However, the Supreme Court has expressly held that this fact does not weigh in favor of a stay in the context of a motion to compel arbitration. *See Moses H. Cone*, 460 U.S. at 19-21 (reasoning that "relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement" and that an arbitration agreement "must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but

---

[10] The Holts reside in Coffeyville, Oklahoma, which is seventy miles from the federal forum and twenty miles from the state forum.

not the arbitration agreement"); *Cason v. Conoco Pipeline Co.*, 280 F. Supp. 2d 1309 (N.D. Okla. 2003) (same).   Therefore, this factor does not weigh in favor of a stay.

The fourth factor, the order in which jurisdiction was obtained by the concurrent forums, "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21.  The State Case was filed approximately six months prior to the Federal Petition to Compel Arbitration.  However, during most of that time, the case was pending in federal court due to its removal.  Approximately one month after this Court's remand of the State Case, in March 2006, IAM filed the Federal Petition to Compel Arbitration and a motion to stay in the State Case.  This motion to stay was granted by the state court approximately seven months later.  However, during this seven months, there was no progress or further proceedings in the State Case.  Most importantly, there was no ruling on the Motion to Dismiss and Compel Arbitration that had been filed in federal court prior to remand.  Thus, although the State Case was filed well in advance of the Federal Petition to Compel Arbitration, there has been no significant progress in the State Case as to the substantive claims or the arbitrability issue.[11]  The "realities" of the progress made in the concurrent forums does not weigh in favor of a stay.  *See Moses H. Cone*, 460 U.S. at 21 (explaining that "priority" factor must be applied in a flexible manner with view to the "realities of the case at hand").

The fifth factor requires consideration of the vexatious or reactive nature of either the federal or the state action.  In this case, both the federal and state actions were, to some extent, reactive.

---

[11]  As explained above, IAM denied that a motion to compel arbitration was pending in the State Case.  This Court disagrees, based on its conclusion that proceedings are remanded exactly as they exist in federal court at the time of remand.  However, it is not clear the state court was aware of the motion to compel arbitration at the time it entered the stay because such motion did not appear on the state docket sheet.

The claims asserted against IAM in the State Case could have been and were asserted in the 2004 arbitration proceeding. They were dismissed on a procedural basis, and the Holts elected to bring their claims in state court against IAM and DeVries (a non-diverse party). Rather than seek enforcement of the arbitration provision in state court, IAM and DeVries chose to remove the State Case and argue fraudulent joinder of DeVries. This was unsuccessful. Again, rather than seeking enforcement of the arbitration provision in state court upon remand, IAM filed this case. IAM's second federal case is reactive in that it is a second attempt to reach the same goal it had upon removal - federal interpretation of the arbitration provision in the Leases. Both parties have sought to vindicate their rights in their chosen forum and have engaged in various tactical maneuvers to do so, but the Court does not find "vexatious" behavior by either party. Accordingly, the Court finds this factor is neutral.

The sixth factor, the adequacy of the state proceedings, weighs in favor of a stay. The state court has concurrent jurisdiction over the arbitration issue and is equally capable of applying Oklahoma contract law in interpreting the arbitration provisions in the Leases. *See Bank One, N.A.*, 288 F.3d at 186 (agreeing with district court's conclusion that state court was adequate forum to decide whether to enforce contractual arbitration provision in contract); *PaineWebber*, 276 F.3d at 208 (reasoning that rights under the FAA would be adequately protected in state court proceeding). Indeed, enforcement of the FAA is "left in large part to state courts." *See Bank One, N.A.*, 288 F.3d at 186 (citing *Moses H. Cone*, 460 U.S. at 26 n.32)).[12] Thus, the sixth factor provides the strongest

_____

[12] In *Moses H. Cone*, the Court determined that the state forum was inadequate only because it was a unique case in which "the party opposing arbitration [was] the one from whom payment or performance is sought," such that the "recalcitrant party would be free to sit and do nothing - neither to litigate nor to arbitrate." *Moses H. Cone*, 460 U.S. at 27. In contrast, this is a more typical case in which the parties opposing arbitration (the Holts) are the parties seeking payment.

basis for abstention.  *See PaineWebber*, 276 F.3d at 208 (reasoning that the sixth factor "presents the strongest basis for a stay because the state court action is adequate to protect PaineWebber's interests").[13]

The seventh factor relates to impermissible forum shopping.  In this case, IAM is forum shopping to the extent it could have easily requested arbitration in the State Case, eliminating the need for removal and the filing of this lawsuit.  Although the Court is baffled by this strategy, this factor only weighs in favor of a stay "when the party opposing the stay seeks to avoid adverse rulings made by the state court or to gain a tactical advantage from the application of federal court rules." *Madonna*, 914 F.2d at 1371.  In this case, there are no allegations that IAM desires to be in federal court due to adverse rulings in the State Case or advantageous federal court rules.  IAM's desire to have this Court decide the arbitrability does not appear to be the sort of forum shopping that is improper in the *Colorado River* context.  *See id.* (reasoning that lack of allegations of improper purposes counseled against finding of improper forum shopping). Accordingly, this factor does not weigh in favor of a stay.

In sum, the adequacy of the state proceedings is the only factor weighing heavily in favor of a stay.  This factor, standing alone, is not sufficient to support a stay.  *See Madonna*, 914 F.2d at 1370 ("[T]he possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action. This factor, like choice of law, is more important when it weighs in favor of federal jurisdiction.").  Under the circumstances presented, and because the "balance [is] weighted heavily in favor of the exercise of

---

[13] It seems possible that, were the Court to stay these proceedings in deference to the State Case, IAM could withdraw its Motion to Dismiss and to Compel Arbitration, rendering the cases non-parallel and landing the case back in federal court.  Therefore, this factor does not weigh as heavily in favor of a stay as it might in other cases.

jurisdiction," *see Fox*, 16 F.3d at 1082, the Court will exercise jurisdiction and decide the arbitrability issue notwithstanding the identical issue presented in the State Case.

## IV.     Arbitrability of Claims

Given the Court's decision to exercise jurisdiction over IAM's Petition to Compel Arbitration, the Court must determine if the claims asserted in the State Case are subject to the arbitration provisions in the Leases.  IAM argues that the claims asserted in the State Case, which are generally that IAM remained on and did damage to the Holts' land after expiration of the Leases, are covered by the arbitration provisions. The Holts contend that "the scope of the Holts' claims is beyond anything contemplated under the terms of the lease between the parties." (Resp. in Opp. to Pet. to Compel Arbitration 5-6.) Specifically, the Holts point to specific lease provisions stating that IAM shall pay for damages caused to growing crops and argue that, because the claims in the State Case allege damage to property other than growing crops, such claims are not covered by the arbitration provisions.

### A.     Right to Jury Trial

In their Response in Opposition to Petition to Compel Arbitration, the Holts argue that Section 4 of the FAA entitles them to a jury trial on the issue of whether their claims are covered by the arbitration provision.  Section 4 provides:

> If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. . . .Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties

19

to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 4.

It is well settled that a party resisting arbitration cannot obtain a jury trial merely by demanding one.  *See Drews Distributing, Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347, 352 n.3 (4th Cir. 2001); *Doctor's Assoc., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996); *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992).  In order to meet the burden of establishing a right to a jury trial under Section 4 of the FAA, a party must unequivocally deny that an agreement to arbitrate has been made and must produce evidence to substantiate the denial.  *See Drews Distributing*, 245 F.3d at 352 n.3; *Stuart*, 85 F.3d at 983-84; *American Heritage Life Ins. Co. v. Beasley*, 174 F. Supp. 2d 450, 456 (N.D. Miss. 2001) ("Here, the Defendant has proffered no evidence whatsoever supporting the conclusion that a jury trial is warranted in this action.").  If the disagreement between the parties involves the *scope* of the arbitration agreement rather than the *making* of the arbitration  agreement, a jury trial is not required by the FAA.  *See Drews Distributing*, 245 F.3d at 352 n.3 (stating that sole disagreement went to scope of arbitration agreement and that a jury trial to resolve this issue would contravene the FAA); *see also* 9 U.S.C. § 4 (providing that "upon being satisfied that the *making of the agreement* for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement") (emphasis added).

In this case, the Holts do not raise fraud, coercion, or other doctrines that would invalidate the making of the arbitration agreements.  They merely argue that their claims relate to a type of property damage that is not covered by the Leases and that such claims are therefore not covered by the arbitration provisions.  Therefore, the disagreement between the parties regarding arbitrability

20

relates solely to the scope of the arbitration provisions and not to the making of such provisions. In addition, the Holts have not submitted any evidence supporting their claim for a jury trial. Accordingly, the Holts have not met their burden of showing they are entitled to a jury trial under Section 4 of the FAA.

### B.     Coverage of Claims by Arbitration Provision

The arbitration provisions in the Leases provide:  "Any *disputes hereunder* that can not be settled through normal business discussions shall be settled through arbitration under the auspices of the American Arbitration Association."  (*See* Leases, Exs. D, F, and G to Pet. to Compel Arbitration (emphasis added).)  The issue is whether the claims asserted in the State Case, which involve allegations that IAM remained on and caused damage to the Holts' land after expiration of the Leases, is a "dispute under" the contract.

As a general rule, tort claims are covered by "broad" arbitration provisions, such as those extending to all claims "arising out of or relating to" the contract, so long as the tort claims "have their roots in the relationship created by the contract." *Long v. DeGeer*, 753 P.2d 1327, 1329 (Okla. 1987); *see P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (reasoning that "arising out of and relating to" language includes all claims that "touch matters" covered by the parties' contract, including tort claims);  Thomas A. Oehmke, 1 Commercial Arbitration § 24:9 ("Tort claims are arbitrable where they have their genesis in, arise out of, and relate to operations or activities under a contract which contains a broad arbitration clause.").  However, this case requires additional analysis because the arbitration provision at issue is slightly more narrow and extends only to those "disputes hereunder."  Such arbitration provisions covering "disputes hereunder" have been described as "broad" but not "unlimited." *See  Rochdale Village, Inc. v.*

21

*Public Service Emp. Union, Local No. 80, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 605 F.2d 1290, 1296 (2d Cir. 1979) (reasoning that insertion of the word "hereunder" "has the effect of limiting, albeit slightly, the parties' duty to arbitrate"). Pursuant to this type of provision, "[a]ll disputes arising 'under' the agreement are to be arbitrated; those that are collateral to the agreement are not." *Id.* Thus, the tort claims at issue must be arbitrated if they are considered to arise under the agreement but will not be arbitrated if they are collateral to the agreement.

The Holts' first, second, and fifth claims - for trespass, conversion, and statutory penalties - are premised on the theory that IAM impermissibly remained on the Holts' land after expiration of the Leases. (*See* Pet. ¶¶ 8, 12, 30, Ex. B to Federal Pet. to Compel Arbitration.)  These claims are inextricably tied to an issue of contract interpretation - whether or not the Leases had expired either by their own terms or due to cessation by IAM of oil and gas production.  Accordingly, the Court finds that the first, second, and fifth claims are disputes that arise "under" the Leases.  *See Sodemo, S.A. v. Chase Manhattan Bank, N.A.*, No. 95-CIV-2944, 1995 WL 746382, at *3 (S.D.N.Y. Dec. 15, 1995) (reasoning that tort claims were covered by arbitration provision requiring arbitration of "disputes hereunder" because the question presented by the tort claims required application and construction of the contract provisions).  The third and fourth claims - for negligence and negligence per se - are premised on the theory that IAM damaged the Holts' property in the course of conducting their oil and gas operations under the Leases.  Although these claims may or may not require interpretation of the Lease provisions, the Court finds that they are also sufficiently tied to the contractual relationship to be considered disputes arising "under" the contract.  As argued by IAM, "it is undisputed that the parties' entire relationship and the basis for the Holts' claims all arise

22

out of IAM's three (3) oil and gas leases on the Holts' property and the pooled acreage being operated thereunder." (Federal Pet. to Compel Arbitration at 18.) These claims are not "collateral" to the Leases but instead arise directly out of the relationship created by the Leases.

The Holts argue that, because the Leases specifically provide that IAM "shall pay for all damages caused by its operations to growing crops on said land" (*see* Leases, Exs. D, E, and F to Fed. Pet. to Compel Arbitration), any and all claims related to damage caused to property other than crops are not within the scope of the arbitration provision. This argument is meritless. Just because one type of property damage is specifically addressed in the Leases, this does not lead to the conclusion that no other type of property damage can arise "under" the Leases. Instead, the arbitration analysis turns on the scope of the arbitration provision and the type of claim asserted. Based on the facts presented and in light of the presumption in favor of arbitrability, the Court concludes that all claims presented in the State Case are subject to arbitration because they are disputes "under" the oil and gas Leases containing the relevant arbitration provisions. *See P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (reasoning that courts must "resolve any doubts concerning the scope of arbitrable issues" in favor of arbitration).

## V.   Conclusion

IAM's Petition to Compel Arbitration (Docs. 2 and 3) is GRANTED, and all claims asserted against IAM in the underlying State Case are compelled to arbitration. IAM could have saved time, judicial resources, and procedural hassle had it initially filed a federal case seeking arbitration of the State Case claims, rather than removed the case to federal court. Alternatively, it could have sought to compel arbitration in the State Case. State courts have jurisdiction to entertain such motions and are equally capable of interpreting arbitration provisions under principles of Oklahoma

23

contract law.  Nonetheless, IAM brought a federal case with proper jurisdiction, the Court did not find grounds to stay this case in deference to the State Case, and IAM is entitled to a ruling from this Court on the arbitrability of the claims asserted in the State Case.  This Court concludes that such claims must be compelled to arbitration.[14]

**ORDERED THIS 8th day of May, 2007.**

**TERENCE KERN,**
**UNITED STATES DISTRICT JUDGE**

---

[14]   IAM's Request for Hearing on Petition (Motion) to Compel Arbitration (Doc. 25) is DENIED as moot.